IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MASTEC NORTH AMERICA, INC.,

Plaintiff,

v.                                                    CIVIL NO. 22-1001 (CVR)

PUERTO RICO TELEPHONE COMPANY,

Defendant.

## OPINION AND ORDER

### INTRODUCTION

MasTec North America, Inc. ("MasTec" or "Plaintiff") filed the present lawsuit against the Puerto Rico Telephone Company, doing business as Claro Puerto Rico ("Claro" or "Defendant"), for Defendant's alleged failure to pay Plaintiff for its restoration of Defendant's telecommunications infrastructure after Hurricane María. Specifically, MasTec alleges the parties agreed to payment on a per-crew, per-day basis for the restoration work, and that pursuant to said agreement, Claro owes MasTec approximately $10,000,000.00.

Plaintiff seeks declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule 57 of Civil Procedure, FED. R. CIV. P. 57, specific performance and damages for breach of contract under Article 1077 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 3052, and damages due to "dolo" under Articles 1054 and 1060 of the Civil Code of Puerto Rico. Id., §§ 3018, 3025. In addition, Plaintiff argues that, if the Court finds no contract existed, the doctrine of unjust enrichment applies. (Docket No. 1).

Before the Court is "MasTec's Motion for Partial Summary Judgment" with its corresponding Statement of Material Uncontested Facts, Oppositions and Reply. (Docket Nos. 191, 192, 219, 220 and 248). Also, before the Court is "Defendant's Motion for Summary Judgment" and "Defendant's *Corrected* Motion for Summary Judgment," along with Claro's corresponding Statement of Uncontested Material Facts, MasTec's Opposition and Claro's Reply. (Docket Nos. 195, 196, 198, 217 and 251).

MasTec requests partial summary judgment of its first cause of action, that a valid contract existed between the parties under which Claro must pay MasTec for its crews on a per-day, per-crew basis. It also moves the Court to recognize that the parties' agreement was only amended twice, to wit in January and March of 2018. (Docket No. 192).

In opposition, Claro explains that in October of 2017 MasTec agreed to additional conditions regarding billing and payment, through the Operational Agreements – Claro PR/PRTC and MASTEC (the "OA"), which it failed to comply with. Specifically, MasTec had to fill out the "Claro Forms" with certain information such as work performed, location of the work, materials obtained for the job and the date of the job, among other things, and give them to Claro's officials.[1] For this reason, Claro claims it does not have to pay MasTec for the work it did not document correctly. (Docket No. 220).

Plaintiff accepts in its Reply that, even though Claro unilaterally amended the Proposal through the OA, MasTec acquiesced to the terms because they were in line with the Proposal it had originally submitted to Claro regarding payment, to wit, that it would

---

[1] Claro's officials then had to fill out certain designated fields and sign them, certifying the work that had been completed. Once signed, the documents would be submitted through the software Claro used for payments, Mesa de Control SAP, which would review and process them to generate a "Purchase Order." These Purchase Orders would then be used to invoice Claro for the work MasTec performed.

be per-day, per-crew, with 12 hours per day guaranteed payment. However, MasTec reiterates that it never agreed to filling out the Claro Forms as a condition prior to payment. (Docket No. 248).

Separately, Claro requests summary judgment and dismissal of all claims asserting MasTec is precluded from demanding payment without submitting the Claro Forms for the alleged unpaid work. Alternatively, Claro contends MasTec has failed to submit the information required for the alleged unpaid work and is, therefore, unable to prove that it performed the work, that Claro breached its payment obligations, or that it is entitled to specific performance. (Docket No. 198).

In opposition, MasTec argues it never agreed to the alleged conditions for payment, rather that Claro unilaterally imposed them. (Docket No. 217). In Claro's Reply, it argues that MasTec consented to its payment being contingent on the completion of specific fields in the Claro Forms, thus they cannot prove breach of contract because the completed forms have not been submitted. It also requests the unjust enrichment clam be dismissed due to the existence of a contract between the parties. (Docket No. 251).

For the following reasons, Plaintiff's Motion for Partial Summary Judgment is DENIED (Docket No. 192),[2] and "Defendant's *Corrected* Motion for Summary Judgment" is GRANTED in part and DENIED in part. (Docket No. 198).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows parties in a case to request summary judgment, or partial summary judgment, if "the movant shows that there is no genuine

---

[2] As Claro filed a corrected motion seeking summary disposition, its original "Motion for Summary Judgment" is DENIED as moot. (Docket No. 196).

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the [C]ourt's denial of the motion for summary judgment." Colón-Pérez v. Dep't of Health of P.R., 623 F.Supp.2d 230, 238 (D.P.R. 2009). In doing so, "the opposing party bears the ultimate burden of proof" and "cannot merely rely on the absence of competent evidence." Id.; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48. An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Similarly, a fact is material if it potentially affects the outcome of the case. Id. "When considering a motion for summary judgment, the Court must 'draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation.'" Ayala v. Kia Motor Corp., 633 F.Supp.3d 555, 562 (D.P.R. 2022) (citing Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013)). A mere "scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Colón-Pérez, 623 F.Supp.2d at 238. Thus, "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010); Colón-Pérez, 623 F.Supp.2d. at 238; Blair-Corrales v. Marine Eng'r Beneficial Ass'n, 380 F.Supp.2d 22, 29 (D.P.R. 2005). If the evidence supports the movant's claim, determining there is no

genuine dispute as to material facts and the movant is entitled to judgment as a matter of law, summary judgment must be granted. Fed. R. Civ. P. 56(a).

Thus, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (citing FED. R. CIV. P. 56(c)).

**UNCONTESTED FACTS**

Before moving on, the Court notes that the parties spent a great deal of ink on numerous statements of uncontested material facts,[3] and their corresponding oppositions, overcomplicating a controversy that boils down to a simple misunderstanding of contractual terms, mainly whether MasTec's employees were going to be paid by the hour or a flat fee per workday. Many of them were also not material to the main controversy in this case. This not only overworked the parties' legal representation but also filled the Court's docket with unnecessary information and arguments that contribute little, if anything, to the resolution of this case.

1. América Móvil is a large telecommunication company with a presence in Latin America, Europe and the United States through numerous subsidiaries. (Docket No. 82, p. 1-2).

2. Puerto Rico Telephone Company, Inc., d/b/a/ Claro Puerto Rico is a subsidiary of América Móvil. (Docket No. 1 ¶ 3).

---

[3] In total, both parties submitted 450 uncontested facts in support of their respective positions. (Docket Nos. 191 and 195).

3. América Móvil approves and provides the funding for Claro's budget. (Docket No. 226, Exhibit No. 2, p. 18, l. 18-21).

4. Claro operates a vast, island-wide network that relies on physical infrastructure consisting of, among other things, thousands of miles of cables and electrical equipment, spread across thousands of telephone poles and hundreds of antennas throughout the island. (Docket No. 1 ¶ 28).

5. On September 20, 2017, Hurricane María's center crossed the southeast coast of Puerto Rico near Yabucoa, causing catastrophic wind damage, massive landfalls and widespread flooding from torrential rains and coastal surges. (Docket No. 189, Exhibit No. 34, p. 2-6).

6. Hurricane María knocked down 80% of Puerto Rico's utility poles and all transmission lines, resulting in the loss of power to essentially all the island's 3.4 million residents. Almost all cell phone service was lost. (Docket No. 189, Exhibit No. 34, p. 7-8).

7. MasTec is a construction company that operates mainly throughout North America across a range of industries. Its primary activities include engineering, building, installation, maintenance and upgrade of communications, energy and utility infrastructure. (Docket No. 189, Exhibit No. 40, p. 5).

8. Shortly after Hurricane María, towards the end of September of 2017, José Tarafa ("Mr. Tarafa"), a former MasTec Network Solutions employee, and Mario Cobo ("Mr. Cobo"), an outside business developer, began conversations with Claro to perform their reconstruction work in Puerto Rico. (Docket No. 189, Exhibit No. 19, p. 33, l. 23-24; Id., p. 34, l. 1-24).

9. Mr. Tarafa and Mr. Cobo initiated the discussions because they had a previous business relationship with Claro and were already established vendors in Puerto Rico. (Docket No. 189, Exhibit No. 19, p. 36, l. 12-22).

10. Manuel Arismendy ("Mr. Arismendy"), MasTec's Division Vice President, prepared the proposal MasTec presented to Claro for their agreement. (Docket No. 189, Exhibit No. 19, p. 46, l. 9-14).[4]

11. On September 24, 2017, Mr. Tarafa emailed Mr. Cobo and Mario Barrera Orozco ("Mr. Barrera"), Claro's Chief Operating Officer, stating that "day rate" assumed a 12-hour workday. (Docket No. 189, Exhibit No. 23).

12. On October 18, 2017, MasTec began deploying crews to perform reconstruction work for Claro. (Docket No. 206, Exhibit No. 26, p. 1-2).

13. On October 22, 2017, José Ojeda ("Mr. Ojeda"), Claro's Compliance Officer, emailed Claro management seeking clarification on certain aspects of Claro and MasTec's relationship. Specifically,

2. The MasTec supervisory staff say that they signed for 12 guaranteed hours. It is important that this is confirmed and clarified, because if all the utility poles are installed in 8 or 9 hours and they run out of materials, only the hours worked would be sent for payment.

3. We must clarify when the brigades will begin counting their work hours, because MasTec supervisors are claiming the time for picking up materials and the transfer time to the work site.
(Docket No. 206, Exhibit No. 18, p. 6).

---

[4] It seems that MasTec began working for Claro under the terms offered in this proposal because, besides this 13-page document which outlined MasTec's offer for its services to Claro, the parties did not present any subsequent document, such as a formal contract, detailing the terms of the final agreement between the parties. Throughout this time the parties exchanged emails and discussed general terms of the agreement, including how many hours crews had to work to complete a workday. Somewhere along the lines, the parties agreed that a workday would be equal to 12 hours.

14. On October 30, 2017, MasTec provided Claro with a proposal adequately directed at Claro, the *Puerto Rico Storm Restoration Proposal* ("the Proposal"). (Docket No. 1, Exhibit No. 5).[5]

15. The Proposal provides the pricing structure for MasTec's services, specifying that each of its crews is to be paid on a daily rate basis. (Docket No. 1, Exhibit No. 5, p. 9).

16. During January 2018, MasTec and Claro agreed that MasTec would amend its line and digger crews' rates from $4,500.00 to $3,700.00 per day. (Docket No. 226, Exhibit No. 23).

17. The January 2018 amendment also revised the price of field supervisors from $2,250.00 to $1,800.00. (Docket No. 191, Exhibit No. 30).

18. On or around October 27, 2017, Luis Y. Ríos Silva ("Mr. Ríos"), Claro's Purchasing Manager, prepared and signed the OA, which clarified some of the terms the parties had been operating under at that time. (Docket No. 1, Exhibit No. 6).

19. Mr. Ríos testified that he prepared the OA following the instructions Mario Barrera Orozco ("Mr. Barrera"), Claro's Chief Operating Officer, gave him conforming to discussions Mr. Barrera allegedly had with Mr. Arismendy. (Docket No. 206, Exhibit No. 4, 120, l. 11-24; Id., p. 121, l. 1-5).

20. The OA was approved by José Islas ("Mr. Islas"), Claro's Subdirector of Purchasing. (Docket No. 1, Exhibit No. 6). No one from MasTec signed the OA.

---

[5] Originally, MasTec sent Claro a proposal on September 25, 2017, which was tailored to AT&T for the reconstruction of AT&T's telecommunications infrastructure. The proposal received was essentially the same, with changes in the "Organizational Structure." It was not until October 30, 2017, when Claro received the correct proposal, tailored to Claro. (Docket No. 1, Exhibit No. 2). By this time, MasTec crews were already in Puerto Rico performing reconstruction work. See Uncontested Fact No. 12.

21. Among others, the OA stated MasTec crews had to work 12 hours a day, while Claro had to provide the crews with 12 hours of work a day. (Docket No. 1, Exhibit No. 6, p. 3).

22. The OA also provided that MasTec's crews had to begin work at 6:30 A.M. to pick up materials and depart to the work site and had to take the necessary steps to supply themselves with the materials required for their operation. (Docket No. 1, Exhibit No. 6, p. 3).

23. During March 2018, MasTec and Claro once again reduced the rates of its line, digger, drop and splicing crews, this time to $2,000.00 per day. This rate was calculated at $200.00 an hour at the rate of 10 hours per day. (Docket No. 226, Exhibit No. 25).

24. MasTec worked on restoring Claro's telecommunications infrastructure from October 18, 2017, until April 20, 2018. (Docket No. 226, Exhibit Nos. 4 and 5).

25. Claro paid MasTec approximately $17.6 million dollars for its work. (Docket No. 1 ¶ 98).

**SUMMARY OF ARGUMENTS**

**1. Plaintiff's Motion for Partial Summary Judgment.**

MasTec moves the Court in its Motion for Partial Summary Judgment to declare the existence of a valid contract between MasTec and Claro, pursuant to the terms of the agreement between the parties.[6] First, it argues MasTec and Claro agreed to the terms outlined in the Proposal, which MasTec negotiated with América Móvil, since América

---

[6] As mentioned earlier, there is no formal contract establishing the terms of the agreement, but the parties seem to have complied with and worked according to the terms of the Proposal. As such, the agreement referenced always refers to the Proposal.

Móvil is the entity with authority to enter into such agreements.[7] The terms under the agreement, established a per-crew, per-day fee structure. Additionally, MasTec contends the only amendments it agreed to were in January and March of 2018, which were amendments that specifically pertained to per-day rates. It never agreed to the OA, which was unilaterally done by Claro, which MasTec alleges had no such authority. Finally, Plaintiff proffers that Mr. Exposito lacked the authority to amend the Agreement, but even if he had said power, his signing and approving of the Claro Forms did not produce a modificative novation. In sum, MasTec maintains the agreement between the parties was payment on a per-crew, per-day, and not per hour basis. (Docket No. 192).

Defendant posits in its opposition that Plaintiff agreed to the additional terms it is now trying to ignore. First, it avers Plaintiff's arguments are contradictory since Claro agreed to amendments while simultaneously arguing that América Móvil was the sole entity with authority to amend such agreements. Second, it contends MasTec consented to additional terms and conditions through the OA. Third, it states that the 12 payable hours were conditioned on MasTec working those hours. Finally, it asserts that Mr. Exposito had the authority to sign the Claro Forms and accept or object to the hours reported by the employees. As such, he consented to the payable hours between MasTec and Claro by signing the Claro Forms with no objection. In sum, Claro's position is that MasTec failed to comply with conditions it had agreed to, and which were necessary to receive payment. (Docket No. 220).

---

[7] The Court notes that the person in charge of these negotiations for América Móvil, Mr. Rafael Couttolenc, was not deposed nor has he been produced. This casts doubt on Claro's argument and on its willingness to discover the truth of the agreement between the parties in this case.

In turn, MasTec posits in its Reply that, even though Claro unilaterally amended the terms of the Proposal through the OA, MasTec acquiesced to it because it conformed to the terms of the agreement. In other words, it argues that Claro agreed to pay a per-day rate. However, it maintains that it never agreed to fill out the Claro Forms as a condition for payment. It further explains that, even though MasTec agreed to complete the Claro Forms to help Claro's field supervisors with their workload and speed up the process, it was done to help, not as a condition to get paid. Finally, MasTec refutes Claro's ability to amend the agreement negotiated and approved by its parent company. (Docket No. 248).

**2. Defendant's Motion for Summary Judgment.**

Conversely, Defendant requests in its Motion for Summary Judgment the dismissal of all claims averring MasTec cannot prove its claims. First, Claro claims MasTec is precluded from demanding payment without submitting the Claro Forms, since it was made clear to MasTec that it was a condition for invoicing and payment. In the alternative, Claro argues MasTec is precluded from demanding payment because it failed to meet the 12-hour work schedule the parties had agreed to. For this reason, Claro maintains MasTec is legally barred from alleging a breach of contract or from demanding specific performance, since it failed to comply with its end of the obligation. Second, Claro avers the cause of action for dolo should be dismissed since the situation was MasTec's own making for failing to comply with the terms it had agreed to. Finally, it posits the cause of action of unjust enrichment should be dismissed given the existence of a contract between the parties. (Docket No. 198).

Plaintiff claims in its Opposition that Claro is overcomplicating a "straightforward

case about non-payment."[8] First, MasTec contends it never agreed to condition the payment to filling out the Claro Forms. It argues that, in fact, the documentation on record states Claro was responsible for filling out its own internal paperwork. Second, it states Claro's alternative theory fails because MasTec provided extensive job-related documentation, and Claro admits to having received it. Third, it posits that there are substantial disputes regarding the meaning and enforceability of the OA, which prohibit the resolution through summary judgment. Fourth, MasTec reiterates Claro unilaterally imposed *post hoc* requirements for payment and refused to cooperate in completing the very paperwork its own protocols required. Finally, the Court cannot summarily adjudicate the unjust enrichment claim until it determines whether a contract existed between Claro and MasTec. (Docket No. 217).

Claro claims in its Reply that MasTec consented to its payment being contingent on filling out the Claro Forms or, in the alterative, on its submission of specific information evidencing the works being invoiced. It also avers MasTec failed to submit any evidence demonstrating that the amounts in dispute correspond to work it performed. Thus, Plaintiff has failed to establish a breach of the contract between the parties. (Docket No. 251).

## LEGAL ANALYSIS

It is black letter law that issues of material fact preclude summary judgment. Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Valenzuela

---

[8] Docket No. 217, p. 1.

Fuentes v. Dictaphone Corp., 334 F.Supp.2d 94, 96 (D.P.R. 2004) (quoting 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 419); Alamo Rodríguez v. Pfizer Pharm., Inc., 286 F.Supp.2d 144, 151 (D.P.R. 2003).

The controversy in this case revolves around an agreement between the parties through which Plaintiff was hired to fix Defendant's telecommunications infrastructure following Hurricane María's impact in Puerto Rico. While Plaintiff contends Defendant owes it almost $10,000,000.00 for its work fixing the infrastructure, Defendant understands Plaintiff failed to comply with certain conditions necessary for it to disburse the payment requested.

From a review of the record before it, and as explained in more detail below, the Court finds that, even though an agreement existed between the parties, the terms of said agreement were never clear. This created confusion between the parties from the beginning of their relationship. As such, it is a jury that, after hearing the parties' theories and evaluating the evidence presented at trial, should resolve the material issues of fact in this case.

A. Unjust Enrichment.

For an unjust enrichment claim to prosper under Puerto Rico law, the claimant must meet certain elements, to wit: "(1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment[] and (5) absence of a legal precept excluding application of enrichment without cause." Montalvo v. LT's Benjamin Rec., Inc., 56 F.Supp.3d 121, 136 (D.P.R. 2014) (quoting Hatton v. Mun. of Ponce, 134 D.P.R. 1001, 1010 (1994)). "The doctrine of unjust enrichment does not apply where there is a contract that governs the dispute at issue." Rivera v. Marriott Int'l, Inc.,

456 F.Supp.3d 330, 339 (D.P.R. 2020). Since it is uncontested that an agreement between the parties existed, the elements for an unjust enrichment claim are not met.

Under Puerto Rico law, a valid contract requires (1) a definite object, (2) consent between the contracting parties and (3) cause for the obligation being established. P.R. Laws Ann. tit. 31, § 3391.[9] Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994, 999 (2009). Object is met when there is a specific item that is the subject matter of the contract, consent is satisfied when one party makes an offer, and the other accepts it, and cause exists when there is a valid reason as to why the parties decided to make a contract. Piovanetti v. S.L.G. Touma, S.L.G. Tirado, 178 D.P.R. 745, 773 (2010).

Consent between the parties can be either explicit or implied. While explicit consent looks at the verbal confirmation of a party's agreement to the terms of a proposed contract, implied consent looks at nonverbal behavior that points to the acceptance of the terms and conditions proffered. "The determining factor in implied consent is the person's behavior, not the words they use to express it." Teachers Annuity v. Soc. de Gananciales, 115 D.P.R. 277, 289 (1984) (Court's translation). See also, Aponte Valentín v. Pfizer Pharm., LLC, 208 D.P.R. 263, 286 (2021). "The acts must unequivocally reveal the willingness to consent. They cannot be compatible with any other intention, nor be subject to different interpretations." Teachers Annuity, 115 D.P.R. at 290 (Court's translation). Thus, even if the parties fail to express their consent verbally or in writing, the agreement is understood as consented to if their behavior is in accordance with the terms of the contract.

---

[9] In November of 2020, the new Puerto Rico Civil Code came into effect. As the contract between the parties was formalized before the new code came into effect, the terms of the 1930 Puerto Rico Civil Code apply. See P.R. Laws Ann. tit. 31, § 11720.

The parties in the present case agree that the Proposal was the basis of their contractual relationship, thus the existence of a contract is not questioned. However, if more was needed, the elements of a formal contract are also met. First, the object of the contract was the rebuilding of Claro's telecommunications infrastructure, and its cause was the need for rebuilding after it was destroyed during Hurricane María. As to consent, even though the parties never formally signed the Proposal, they immediately began working on the project which conformed to the terms and conditions outlined in the Proposal. Additionally, the uncontested amendments made in January and March of 2018, reference the initial rates established in the Proposal and reduced them by agreement of the parties, demonstrating that the rates included in the Proposal were the applied rates for over six months. The parties' behavior unequivocally demonstrates consent of the Proposal. As such, a contract existed between the parties and, the elements of a cause of action for unjust enrichment are not met.

For this reason, Defendant's Motion for Summary Judgment, as to the unjust enrichment claim, is GRANTED. (Docket No. 198). The unjust enrichment claim is DISMISSED.[10]

B. Breach of Contract.

The Puerto Rico Civil Code states that "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its

---

[10] MasTec requests in its Motion for Partial Summary Judgment that, in addition to recognizing there is a valid contract between the parties, the Court determine the parties' agreement was structured on a per-day, per-crew rate with a 12 hour guarantee, that the only valid amendments were the rate adjustments, and that the Claro Forms did not and could not alter the agreed-upon terms. Although the Court finds there was a valid contract between the parties, it cannot find in MasTec's favor on the other issues since those are precisely the remaining controversies in this case, which as the Court will explain, cannot be solved via summary judgment. Thus, although the Court finds there was a valid contract between the parties, the remainder of "MasTec's Motion for Partial Summary Judgment" is denied at this juncture. (Docket No. 192).

stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." P.R. Laws Ann. tit. 31, § 3471; see also Autoridad de Carreteras y Transportación v. TransCore Atl., Inc., 387 F.Supp.3d 163, 166 (D.P.R. 2017). However, the only terms which can be catalogued as clear are those which in themselves are lucid enough to be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation, and without necessitating for their understanding any reasoning or illustration susceptible to challenge." Catullo v. Metzner, 834 F.2d 1075, 1079 (1st Cir. 1987) (quoting Hiers of Ramírez v. Superior Court, 81 D.P.R. 347 (1959)). Where terms of the contract are unclear, a court may look at extrinsic evidence of the intent of the parties. TransCore Atl., Inc., 387 F.Supp.3d at 167; Velázquez Casillas v. Forest Lab'ys, Inc., 90 F.Supp.2d 161, 170 (D.P.R. 2000). After doing so, if the terms remain unclear, summary judgment is not proper.

After evaluating the evidentiary record in this case, the Court finds summary judgment for neither party is warranted because there are material issues of fact pertaining to the rate at which the infrastructure reconstruction was to be paid, which is the heart of this case. After evaluating the Proposal and the OA, it seems like the payment was to be made on a per day basis. Specifically, because the Proposal includes the "Price Structure" as a "Daily Rate,"[11] and the subsequent January and March 2018 amendments were made to amend this previously established daily rate.[12] This daily rate, however, clearly created confusion between the parties from the beginning because on October 23,

---

[11] Docket No. 1, Exhibit No. 5, p. 9.
[12] Docket No. 226, Exhibit No. 23; Docket No. 191, Exhibit No. 30.

2017, just five days after MasTec's crews arrived in Puerto Rico and began the reconstruction project, David Carreras Briganty, Claro's Subdirector of Operation ("Mr. Carreras"), asked Mr. Arismendy for a meeting because they needed to discuss "[m]aterials... daily rate vs[.] h[ou]rs worked... line crews... travel time."[13] Mr. Arismendy demonstrated the same confusion by responding as follows: "Yes I agree David ... I just sent you an email with the same concern."[14] The Court notes this exchange occurred after MasTec's crews were already working. Thus, the crews began working before the parties clarified an essential term of the contract.

To specify what a daily rate meant, Claro officials established in the OA that a day meant 12 hours.[15] Although Claro alleges Mr. Arismendy negotiated the terms established in the OA, no one from MasTec ever signed it.[16] The OA states, in relevant part,

> (d) The brigades will work 12 hours per day and Claro PR/PRTC must ensure that it has the necessary workshop to guarantee the 12 hours per-day (hours include: mobilizing material to warehouses, refueling, or other applicable hours).

> (e) To this end, they are guaranteed 12 hours a day and it is emphasized that Claro PR/PRTC must have a workshop for them, sufficient and previously scheduled to comply with the 12 hours.[17]

The OA also states that "Claro PR is required to have planned and notified three days in advance the work to be done. Without this planning, if there are brigades without a shop (Claro PR/PRTC would be paying for MASTEC personnel/brigades without a shop)."[18]

---

[13] Docket No. 226, Exhibit No. 10, p. 1.
[14] Id.
[15] Docket No. 1, Exhibit No. 6, p. 3.
[16] The Court notes that, although MasTec initially stated in the Complaint that the agreements between the parties included the OA, it later argued in its Motion for Partial Summary Judgment that the OA was not an agreement between the parties. It finally accepted in its Reply that it acquiesced to the terms established in the OA.
[17] Docket No. 1, Exhibit No. 6, p. 3.
[18] Id.

MasTec North America, Inc. v. Puerto Rico Telephone Company
Opinion and Order
Civil 22-1001 (CVR)
Page 18

_____

Claro's attempt at defining the daily rate by dividing it into hours, however, seems to have created even more confusion between the parties. While MasTec posits the daily rate means full payment of the rate no matter what, Claro argues that the rate is divisible by hours and that it could end up paying only a fraction of the rate established in the Proposal.

Considering how differently each party has interpreted the language applicable to the payment rate, there is a clear issue of material facts as to this core matter. That said, the Court looks at the parties' intent. See Exec. Leasing Corp. v. Banco Popular de P.R., 48 F.3d 66, 69 (1st Cir. 1995) ("to consider the extrinsic evidence at all, the court must first find the relevant terms of the agreement unclear."); Asoc. Res. Los Versalles v. Los Versailles, 194 D.P.R. 258, 268 (2015); C.F.S.E. v. Unión de Médicos, 170 D.P.R. 443, 452 (2007); Carrillo Norat v. Camejo, 107 D.P.R. 132, 138 (1978).

As to the intention of the parties, the confusion evidently persisted, since years later during their depositions, witnesses for both parties expressed different views as to what the Proposal and OA established as a pay rate. Mr. Arismendy, MasTec's Division Vice President, and Mr. Exposito, the Senior Project Manager of the restoration project, testified that the per-day, per-crew payment agreement was per day no matter how many hours crews worked.[19] José Asencio-Ortiz ("Mr. Asencio"), Claro's Manager, also testified that "[i]t's a contract per day."[20] However, Mr. Islas, Claro's Subdirector of Purchasing, testified that he had negotiated prices with Mr. Arismendy on a per hour basis.[21] María del Mar Martínez Méndez, Claro's Director of Auditing ("Ms. Martínez-Méndez"),

---

[19] Docket No. 189, Exhibit No. 19, p. 72, l. 1-2; Id., Exhibit No. 8, p. 226, l. 19-21.
[20] Docket No. 226, Exhibit No. 15, p. 43, l. 5-6.
[21] Id., Exhibit No. 2, p. 65, l. 10-21.

testified that the crews could not be paid for 12 hours if they did not perform 12 hours of work,[22] and Mr. Ojeda, Claro's Compliance Officer, likewise testified that "the 12 hours were 12 worked hours."[23] Mr. Carreras, Claro's Subdirector of Operation, testified that "it was [not] a day no matter what,"[24] because "if they work[ed] 2 hours, they [would not] be paid for 12."[25] However, Mr. Arismendy clarified that if "Claro did not give [MasTec] enough work to meet a twelve (12) hour work schedule, that crew would still be paid the full day."[26] Finally, Mr. Barrera, Claro's Chief Operating Officer, testified that, even though the payment was per day "it [was] like a unit,"[27] which could be divided per hour. The misunderstanding between Claro and MasTec officials cannot be clearer.[28]

As further evidenced by the docket, the people involved in the invoicing process also lacked clarity as to how they were meant to invoice the hours to be paid. The OA stated that the 12 hours per day included "mobilizing material to the warehouses, refueling and others that may apply."[29] This description is vague and confusing, as is shown by the record through MasTec and Claro's officials. While Maribel González Soto, one of Claro's field supervisors ("Ms. González Soto"), and Mr. Ojeda testified that the 12 hours reported only included the hours worked,[30] Mr. Carreras, Claro's Subdirector of Operation, testified he was unsure how to adjust the hours if crews were "leaving before

---

[22] Docket No. 189, Exhibit No. 5, p. 104, l. 6-10.
[23] Docket No. 226, Exhibit No. 14, p. 125, l. 17.
[24] Docket No. 206, Exhibit No. 7, p. 325, l. 4.
[25] Id., p. 183, l. 22-23.
[26] Docket No. 189, Exhibit No. 20, p. 40, l. 21-24; Id., p. 41, l. 1-5.
[27] Docket No. 226, Exhibit No. 1, p. 59, l. 10.
[28] To further complicate matters, Claro's billing for the reconstruction work also created problems. Mr. Ríos, Claro's Purchasing Manager, testified that the system Claro used to input the hours worked was designed to either plug the time worked by "item" or by "hour." Thus, Claro's own billing system did not allow for a "day" measurement to be entered. Docket No. 226, Exhibit No. 8, p. 29, l. 21-25; Id., p. 30, l. 1-17.
[29] Docket No. 1, Exhibit No. 6, p. 3.
[30] Docket No. 206, Exhibit No. 3, p. 175, l. 22-23; Docket No. 226, Exhibit No. 14, p. 125, l. 1-23.

established time, arriving late, or [encountered] trucks that were out of service."[31]
Interestingly enough, Ms. González Soto even testified she "[did not] remember seeing
that [the day rate was to be calculated at] 12 hours."[32] However, Mr. Arismendy testified
that project managers had the authority to make adjustments to the reported time on a
case-by-case basis, creating the possibility that there was no definite structure in the daily
hour reporting.[33]

Considering the evidence on record, deciphering what the parties meant by day
rate has turned into a "he said-she said." As such, there are material facts in controversy
that prevent the Court from disposing of this case at the summary judgment stage. This
is a question that a jury, in due time and after assessing credibility, will decide. See
Marshall v. Pérez Arsuaga, 828 F.2d 845, 849 (1st Cir. 1987) ("In any case where there
might be reasonable difference of opinion as to evaluative determinations … the question
is one for the jury.")

Regarding the Claro Forms, MasTec agrees that it was asked to fill out the Claro
Forms, which were Claro's responsibility. However, it denies having been told its payment
would be conditioned to the filling out of said forms. Supporting MasTec's contention, the
record contains no evidence that the parties agreed that MasTec had to sign the Claro
Forms as a condition to receive payment. In fact, the Proposal, its amendments and the
OA remain silent as to who is responsible for filling out the Claro Forms. When Mr.
Arismendy was asked about MasTec filling of the Claro Forms, he testified that at no point
in time did "MasTec agree that payment [would] be subject to submitting the Claro

---

[31] Docket No. 206, Exhibit No. 7, p. 174, l. 23-25.
[32] Docket No. 226, Exhibit No. 30, p. 179, l. 22-23.
[33] Docket No. 189, Exhibit No. 20, p. 57, l. 21-22; Id., p. 58, l. 1; Docket No. 226, Exhibit No. 12, p. 172, l. 14-25.

Forms," but that MasTec initially filled out the Claro Forms to help speed up the payment process.[34] On the other hand, Mr. Barrera, Claro's Chief Operating Officer, testified that "[MasTec] did know about the agreement."[35]

The record reflects two important emails between the parties sent on October 28, 2017. First, Mr. Ojeda, representing Claro, sent Mr. Exposito the Claro Form with an example of how to fill it out.[36] This e-mail does not include a demand that MasTec needed to fill them out to receive payment, rather Mr. Ojeda simply said "[l]et me know if you have any questions."[37] Later that same day, Mr. Ojeda sent Mr. Carreras and Mr. Asencio a plan that MasTec, allegedly through Mr. Exposito, proposed for completing the documents. This proposal included completing the Claro Forms digitally and having Claro approve them digitally.[38] Once again, there is no mention that this was a condition for payment.

The record also reflects that on November 3, 2017, Ms. Martínez Méndez sent an e-mail to Mr. Islas, Mr. Ojeda, Mr. Carreras, Mr. Barrera and others, summarizing an internal Claro meeting in which those present agreed that the contractors, i.e. MasTec, would have to prepare the documentation instead of the supervisors, so they would not waste time and just had to sign their approval.[39] However, when asked about said meeting, both Mr. Barrera and Mr. Islas testified that they did not recall if any MasTec's officials had participated in it.[40] When asked about the Claro Forms, Mr. Exposito

---

[34] Docket No. 189, Exhibit No. 21, p. 159, l. 11-14.
[35] Docket No. 226, Exhibit No. 1, p. 230, l. 13-14.
[36] Docket No. 206, Exhibit No. 18, p. 8-14.
[37] Id., p. 8.
[38] Id., Exhibit No. 19, p. 1.
[39] Docket No. 226, Exhibit No. 34.
[40] Id., Exhibit No. 1, p. 230, l. 11-18; Id., Exhibit No. 2, p. 180, l. 25; Id., p. 181, l. 1-4.

testified they "were completed by Claro from the beginning."[41] Specifically, he testified that "Waldemar, [one of Claro's field supervisors,] started to do the forms and then he stopped and [MasTec] had to take over."[42] The reason why Claro stopped filling the forms and MasTec began filling them remains unclear.

Moreover, the Claro Forms are internal documents Claro uses to record the work and payments it disburses.[43] Actually, Claro's Protocol No. 2017-001 and Protocol No. P-IO-012, both active at the time MasTec performed work for Claro, state that Claro's own field operations supervisors are responsible for submitting the Claro Forms.[44] Thus, from the record, the Court can conclude that at first, Claro filled out the Claro Forms and that at some point MasTec began doing so, even though Claro's protocols indicated that it was Claro's responsibility. The Court cannot categorically conclude, on this contradictory evidence, that the parties agreed that MasTec would be responsible for filling out the Claro Forms and much less that MasTec's payment was conditioned upon it filling out the forms.

In sum, there is an evident discrepancy between the parties in their understanding of the terms and conditions that governed their relationship. While MasTec understood the pay rate was a flat per-day, per-crew amount, Claro understood payment to be conditioned on working 12 hours per day and on filling out the Claro Forms while invoicing. In evaluating the evidence, the jury could find for either party.

For the reasons stated above, the Court finds there are multiple material issues of

---

[41] Docket No. 189, Exhibit No. 8, p. 194, l. 11-12.
[42] Id., p. 219, l. 10-12.
[43] Docket No. 226, Exhibit No. 27; Id., Exhibit No. 31.
[44] Id.

fact that preclude the Court from resolving this case at the summary judgment juncture. Consequently, Defendant's Motion for Summary Judgment on the breach of contract claim is DENIED. (Docket No. 198).

    C. Bad Faith.

    MasTec also brings forth a bad faith claim against Claro for engaging in bad faith during their contractual agreement because it continuously changed the requirements for payment, making them more onerous, and ultimately failed to comply with the payment obligations contained in the Proposal. In turn, Claro asserts in its motion that MasTec cannot prove that Claro breached its contractual obligation and that MasTec was aware and in agreement with the terms and conditions required for payment. Thus, Claro asks the Court to dismiss the dolo claim because MasTec's problem is its own making.

    "The Puerto Rico Supreme has recognized that contractual dolo is a broad term that 'includes deceit, fraud, misrepresentation, undue influence' and other insidious machinations." P.R. Tel. Co., Inc. v. SprintCom, Inc., 662 F.3d 74, 99 (1st Cir. 2011) (quoting Márquez v. Torres Campos, 111 D.P.R. 854, 863-864 (1982)). It can take two forms: "(1) dolo in the formation of contracts, and (2) dolo in the performance of contractual obligations." Punta Lima, LLC v. Punta Lima Dev. Co., LLC, 425 F.Supp.3d 87, 105 (D.P.R. 2019); Portugués-Santana v. Rekomdiv In'tl, 657 F.3d 56, 59 (1st Cir. 2011). In the performance of an obligation, contractual dolo "occurs where a party, knowingly and intentionally, through deceitful means, avoids complying with its contractual obligation." Id. at 106 (quoting Casco, Inc. v. John Deere Constr. & Forestry Co., Civil No. 13-1325 (PAD), 2015 WL 4132278 at *2 (D.P.R. July 8, 2015)). Dolo in the

performance of an obligation is equal to bad faith. Punta Lima, LLC, 425 F.Supp.3d at 105.

Bad faith is never presumed. Oriental Fin. Grp., Inc. v. Fed. Ins. Co., Inc., 598 F.Supp.2d 199, 219 (D.P.R. 2008). "In order to prove dolo the party would have to demonstrate the intentional fault or bad faith of the person to whom it is imputed, given that good faith is presumed." Burk v. Paulen, 100 F.Supp.3d 126, 135 (D.P.R. 2015) (quoting Citibank v. Dependable Ins. Co., 121 D.P.R. 503, 519 (1988)). Thus, Plaintiff must sufficiently plead that Defendant acted with intentional fault or bad faith to deceive it in accepting and fulfilling the agreement.

Before going any further, the Court recognizes that both parties point fingers at each other regarding the contract and the subsequent actions that gave rise to this case. From a review of the record before it, the Court notes that both parties are largely responsible for the predicament they currently find themselves in. For example, even though in MasTec's Proposal MasTec offered to use a digital platform to record and document the work conducted, Claro refused and instead the parties used *ProntoForms*, which required cellular service, precisely what the island lacked at the time. The use of this platform proved difficult since even Mr. Exposito testified that "[i]t was hard keeping it up to work [for] what [they] needed, for the information that we wanted to gather."[45] This, alone, overcomplicated the documentation of the work done, since it meant field supervisors could not adequately keep track of the work performed.

---

[45] Docket No. 189, Exhibit No. 8, p. 71, l. 19-21.

MasTec North America, Inc. v. Puerto Rico Telephone Company
Opinion and Order
Civil 22-1001 (CVR)
Page 25

As previously discussed, issues of fact remain as to the breach of contract claim. Since the dolo claim is contingent on the breach of contract claim and deals with motive and intent, the Court cannot resolve whether Claro incurred in dolo at this juncture. See Oriental Fin. Grp. v. Fed. Ins. Co., 309 F.Supp.2d 216, 230 (D.P.R. 2004) (declining to dismiss the dolo claim as "issues of motive and intent should not be addressed via summary judgment and are better suited for the jury to award"). As such, it will be a jury that, in due time, will decide whether Claro acted in bad faith.

Therefore, Defendant's Motion for Summary Judgment as to the bad faith claim is DENIED. (Docket No. 198).

## CONCLUSION

As stated by Plaintiff, "[i]t is undisputed that there are many disputed material facts that support the denial of Claro's [Motion for Summary Judgment]."[46] The Court believes this is true for Plaintiff's motion as well because "what is good for the goose is good for the gander." Both parties have raised issues of fact that impede the Court from granting summary judgment. There are simply too many unanswered variables that preclude summary judgment in favor of either party. Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) ("A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way.") "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." García-Matos v. Bhatia-Gautier, 156 F.Supp.3d 245, 252 (D.P.R. 2016). Thus, a jury will evaluate the remaining claims between the parties.

---

[46] Docket No. 217, p. 13.

MasTec North America, Inc. v. Puerto Rico Telephone Company
Opinion and Order
Civil 22-1001 (CVR)
Page 26

_____

     For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is DENIED (Docket No. 192) and "Defendant's *Corrected* Motion for Summary Judgment" is GRANTED in part and DENIED in part. (Docket No. 198). Accordingly, the unjust enrichment claim is DISMISSED.

     IT IS SO ORDERED.

     In San Juan, Puerto Rico, on this 25th day of February 2026.

                                 S/CAMILLE L. VELEZ-RIVE
                                 CAMILLE L. VELEZ-RIVE
                                 UNITED STATES DISTRICT JUDGE